IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VALERO MARKETING AND SUPPLY COMPANY | * * * | Civil Action No. 14-2712-NJB-KWR |
| v. | * * | Filed Under Rule 9(h) Fed. R. Civ. P. (Admiralty) |
| M/V ALMI SUN, IMO NO. 9579535, her engines, apparel, furniture, equipment, appurtenances, tackle, etc., *in rem*, | * * * | |

## MEMORANDUM IN SUPPORT OF

## MOTION TO RECONSIDER AND/OR TO ALTER OR AMEND ORDER

Plaintiff, Valero Marketing and Supply Company ("Valero"), respectfully submits this memorandum in support of its motion requesting the Court to reconsider and to alter or amend its Order of December 28, 2015.  R. Doc. 31.  As set forth herein, Valero submits that the undisputed facts support Valero motion for summary judgment to enforce its maritime lien against the ALMI SUN.

**A.    LEGAL STANDARD**

The Federal Rules of Civil Procedure do not expressly recognize motions for reconsideration. *Bass v. U.S. Dep't of Agric.,* 211 F.3d 959, 962 (5th Cir.2000). A motion for reconsideration filed within twenty-eight days of the district court's judgment will be recharacterized as a motion to alter or amend the judgment and it will be construed pursuant to Rule 59(e). *Shepherd v. Int'l Paper Co.,* 372 F.3d 326, 327 n. 1 (5th Cir.2004).  A motion for reconsideration filed more than twenty-eight days after the judgment is treated as a Rule 60(b) motion for relief from judgment. *Id.  Worley v. Louisiana State*, No. CIV.A. 10-3313, 2012 WL 777408, AT *1 (E.D. La. Mar. 8, 2012).

A motion to alter or amend under Federal Rule 59(c) questions the correctness of a judgment. *Maurer v. Town of Independence, La.* No. 13-5450, 2015 WL 4097022, at *2 (E.D. La. 2015) (granting motion to amend under Rule 59 (e). Rule 59(e) is properly invoked "to correct manifest errors of law or fact or to present newly discovered evidence." *Id*. District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment." *Mitchell v. Hood*, No. 13-5875, 2015 WL 4661599, AT *3 (E.D. La. 2015) (quoting *Hale v. Townley*, 45 F. 3d 914, 921 (5th Cir. 1995)).

**B**.   **ARGUMENT**

As the Court held, maritime liens arise by operation of law and are not created by contract.[1]  Thus the issue focuses on the relationship of the provider to the order of the owner or someone authorized by the owner.  33 U.S.C. § 31342 (a).

Factually, Valero delivered bunkers to the ALMI SUN in Corpus Christi on October 25-26, 2014 pursuant to the order of Almi Tankers, SA, through its intermediaries, OW Malta and OW USA.  More exactly, Valero, and Valero alone, bunkered the ALMI SUN under the direct coordination, supervision, and control and approval of the ALMI SUN personnel.  Verna, as claimant of the vessel, has offered no evidence that any other entities (i.e., OW Malta or OW USA) engaged in any coordination, supervision, testing or approval of Valero's bunkers or its bunkering of the vessel.  In the absence of such evidence or material facts, Valero is entitled to enforce its lien as a matter law. See, e.g. *Marine Fuel Supply and Towing, Inc. v. M/V KEN*

---

[1] R. Doc. 31, pp. 20-21, citing *Vestoil, Ltd. v. M/V M Pioneer*, 148 F. App'x 898, 900 (llth Cir. 2005); see also *Bird of Paradise,* 72 U.S. 545, 555, (1866); *Newell v. Norton*, 70 U.S. 257, 262 (1865) ("Maritime liens are not established by the agreement of the parties . . . They are consequences attached by law to certain contracts, and are independent of any agreement between the parties that such liens shall exist.  They, too, are *stricti juris*."); *Marine Oil Trading Ltd. v. M/T PAROS*, 287 F. Supp. 2d 638, 644 (E.D. Va. 2003) ("While a maritime lien does arise by operation of law rather than by agreement between the parties, there are a number of reasons for including contractual language alerting the parties to the existence of a lien on the ship.  This language does not, however, actually give rise to the lien.").

*LUCKY*, 869 F.2d 473 (9th Cir. 1988); *Stevens v. United States*, 913 F.2d 1521 (11th Cir. 1990); *Atl. & Gulf Stevedores, Inc. v. M/V Grand Loyalty*, 608 F.2d 197, 202 (5th Cir. 1979). *Stevens* was a general contractor-subcontractor case. Therein the Eleventh Circuit recognized that subcontractor of only 15% of the general contract would be entitled to a lien because of the vessel operator's collaboration with the performance of subcontractor's discrete services. 913 F.2d at 1535-36.

Verna opposes Valero's maritime lien, asserting its contractual relationship was with OW Malta, not Valero. Significantly, Verna nowhere contends that OW Malta has a maritime lien. In fact, Verna denies that it owes anyone for the bunkers. R. Doc. 18-1, p. 2 (Verna commenced arbitration, "seeking a declaration of non-liability towards OW Malta/ING Bank with respect to their alleged claim for payment.) Thus, Verna's position is that it owes no one for the bunkers it has consumed and no one has any lien rights against the vessel.

Instead, Verna wrongly interposes its potential separate *in personam* contract with OW Malta party as its excuse for using Valero bunkers without paying for them. Verna's argument is misplaced. Legally, the proper focus of CIMLA is on the relationship of the "provider," not the myriad of ancillary contractual obligations, common law agency, or layers of middlemen:

> A person providing necessaries to a vessel on the order of the owner or person authorized by the owner –
>
> (1) has a maritime lien on the vessel;
> (2) may bring a civil action in rem to enforce the lien; and
> (3) is not required to allege or prove in the action that credit was given to the vessel.

This maritime lien statute nowhere mentions agency, privity of contracts, middlemen, owner-contractor, contractor-subcontractor, etc. In this respect, Valero submits that the Court

3

accorded undue weight to the <u>possible</u> existence of an *in personam* contractual obligation of Almi Tankers, a non-party, to OW Malta, a foreign non-party entity. R. Doc. 31, p. 29. Obviously, the performance, non-performance and/or improper performance by Valero would affect the liabilities of both Valero and OW Malta to the vessel interests. Such is not a basis to defeat a maritime lien. In this case, OW Malta was not even involved in the actual performance of the owner's order for the bunkers. *Cf. A/S Dan-Bunkering v. M/V Zamet*, 945 F. Supp. 1576 (S.D. Ga. 1996); *Exxon Corp v. Central Gulf Lines, Inc.*, 780 F. Supp 191 (S.D.N.Y 1991), wherein contract providers, who were not physical suppliers, were recognized to have a maritime lien when they had actually paid for the bunkers. In this case, neither Almi Tankers, nor any OW entity, has paid for the bunkers.

Valero's right to a lien is evident from the undisputed facts. Almi Tankers ordered the bunkers through OW Malta, knowing that OW Malta could not itself supply the vessel; had to engage a domestic supplier [Valero] to perform the bunker order; and accepted OW Malta's designation of Valero to fulfill Almi Tanker's order. While Almi Tankers' knowledge alone is not always dispositive, Valero alone dealt with the vessel, insured the bunkers' compliance with the owner's order, would be liable if its bunkers failed to comply, and then obtained a bunker receipt from the vessel authorized officer, acknowledging both Valero's compliance will be owner's order and Valero's lien.

Clearly, Valero has satisfied the relationship necessary to establish its lien by operation of law. See, e.g. *Stevens v. United States*, 913 F.2d 1251 (11th Cir. 1990); *Atlantic & Gulf Stevedores, Inc. v. M/V GRAND LOYALTY* 608 F.2d 197 (5TH Cir. 1979). In this context, the vessel cannot decline to pay when the vessel accepted Valero as the designated supplier (as did Owners); coordinated and approved Valero's delivery of the bunkers; acknowledged the

bunkers' compliance and Valero's notice of lien, and then set sail, silently disputing Valero's delivery of the bunkers on the order of Almi Tankers. Under the circumstances, the ALMI SUN should have either declined delivery or notified Valero that it disputed Valero's lien before it sailed off and used the bunkers. See, e.g. *Ferromet Resources, Inc. v. Chemoil Corporation*, 5 F.3d 902 (5th Cir. 1993).

Valero's lien is fully supported by maritime caselaw. For example, in *KEN LUCKY*, the vessel required bunkers to operate, and the bunker supplier provided bunkers directly to the vessel as requested by an intermediary who was not shown to have authority to bind the vessel. In *Ken Lucky*, the subcharterer (Bulkferts) would ordinarily pay the intermediary (Brook), 869 F.2d at 475 n.1, and the physical supplier (Marine Fuel) sought payment from one intermediary (Gray) and then another (Brook). 869 F.2d at 475. No contract existed between the physical supplier and Bulkferts, and the Ninth Circuit specifically held that no proof of agency was required between Bulkferts and Brook. 869 F.2d at 477 ("We conclude that Marine Fuel need no establish agency between Brook and Bulkferts to fall within the scope of one entitled to a maritime lien under the Act.").

The supply of bunkers was in compliance with the charterer's order, just as Valero's supply was in compliance with Almi Tanker's order for bunkers. This was not like the *Lake Charles Stevedores, Inc. v. PROFFESSOR FLADIMIR POPOV MV,* 199 F.3d 220 (5TH Cir. 1999) or *Farwest Steel Corp. v. Sea Barge Span* 241, 892 F.2d 825 (9th Cir. 1987), where the claimant's work was a small fraction of a larger undertaking by a shipper or shipyard. For example, Broussard, the rice shipper in *Lake Charles Stevedores*, contractually undertook to sell rice to the charterer, purchase bags for its rice, obtain shipment of the rice from mill to dock, unload the trucks, and then to stow and trim the vessel. The stevedore asserted a lien claim

solely for the last item of the shipper's sale and services. *Lake Charles Stevedore*, 199 F. 3d at 221. Broussard invoiced to the charterer was on a "per ton" basis for the complete sale of the shipped rice. Its charge was not simply a markup of a separate stevedoring service to the vessel. Significantly, the charterer paid Broussard in full for its entire service in overseeing its sale and shipment of rice, including the stevedoring services.

Further, Valero meets the requirements of *Lake Charles Stevedores* as demonstrated by the deposition of Owner's corporate representative, which this Court permitted the parties to take, and who testified that Valero was identified and accepted as physical supplier prior to performance, and that Owners knew OW Malta did not have facilities in Corpus Christi to deliver bunkers and therefore needed to hire the domestic supplier to deliver the bunkers ordered by Owners. *Lake Charles Stevedores* noted that courts have permitted a maritime lien to physical suppliers in such circumstances. 199 F.3d at 230-31 ("Whether a contractor could be expected to hire subcontractors has been considered in assessing whether the subcontractors have liens. . . . In other cases in which subcontractors have been found to be entitled to a lien, those subcontractors were identified and accepted by the vessel's owner or charterer prior to performance.").

Despite its claim to equity, Verna has not paid OW Malta and denies its liability to Malta and Valero. OW Malta has not paid Valero, and has not intervened or arrested the vessel. Valero promptly acted to arrest the vessel and enforce its lien rights. Regardless whether Almi Tankers has other contractual obligations, Valero has a maritime lien to recover for providing bunkers to the ALMI SUN on the Order of Almi Tankers, SA.

## CONCLUSION

For the foregoing reasons, Valero requests that the Court reconsider its Order and grand summary judgment enforcing the maritime lien herein.

Respectfully submitted,

*/s/ Michael H. Bagot, Jr.*
_____
MICHAEL H. BAGOT, JR. (#2665)
THOMAS J. WAGNER (#13143)
THOMAS A. RAYER, JR. (#20581)
WAGNER, BAGOT & RAYER, LLP
Pan American Life Center – Suite 1660
601 Poydras Street
New Orleans, Louisiana 70130
Telephone: 504-525-2141
Facsimile: 504-523-1587
E-mail: mbagot@wb-lalaw.com
E-mail: twagner@wb-lalaw.com
E-mail: trayer@wb-lalaw.com
Attorneys for Plaintiff, Valero Marketing and
    Supply Company

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and notice will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and may access this filing through the Court's system.

*/s/ Michael H. Bagot, Jr.*
_____
MICHAEL H. BAGOT, JR.